### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**DAMON DAVID CALISTE**                                        **CIVIL ACTION**

**VERSUS**                                                            **NO. 13-5726**

**BURL CAIN, WARDEN**                                        **SECTION "R"(2)**
**LOUISIANA STATE PENITENTIARY**


### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      STATE COURT PROCEDURAL BACKGROUND

The petitioner, Damon David Caliste, is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On January 21, 2009, Caliste and a co-defendant, Darien P. Hinkel, were charged by bill of information in St. Tammany Parish with theft of property valued at $500 or more.[3]  The Louisiana First Circuit Court of Appeal summarized the facts of the case as determined at trial in relevant part as follows:

>       On November 18, 2008 around 10:00 p.m., the defendant and codefendant Hinkel entered a Wal-Mart Supercenter in Slidell, Louisiana, and stole several digital photo cameras.  The cameras were stored on a locked peg in the photography department of the store and were discovered missing when a store manager recovered several empty camera packages placed throughout the store.  The manager reported the missing cameras to the store's loss prevention manager, Brandon Brown, the next day.  Brown determined that the defendants stole fourteen cameras valued at an approximate combined total of $1,377.00.  The defendants returned to the store around 3:00 p.m. the following day, November 19, 2008, and were identified and apprehended by the Slidell Police Department.

State v. Caliste, 56 So.3d 464 (La. App. 1st Cir. 2010) (Table); State v. Caliste, No. 2010-KA-0650, 2010 WL 4272854, at *1 (La. App. 1st Cir. Oct. 29, 2010); State Record Volume 3 of 4, Louisiana First Circuit Court of Appeal Opinion, 2010-KA-0650, pages 2-3, October 29, 2010.

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 4, Bill of Information, 1/21/09.

Caliste and Hinkel, who also is Caliste's cousin, were jointly tried before a jury on July 28 and 29, 2009, and were found guilty as charged.[4]  The state trial court later sentenced Hinkel to serve forty (40) years in prison as a fourth felony offender.[5]

At a hearing on January 22, 2010, the court denied Caliste's motions for new trial and to modify the verdict filed by Caliste's newly retained counsel.[6]  The court adjudicated Caliste a fourth felony offender and sentenced him to serve life in prison at hard labor, without benefit of parole, probation or suspension of sentence.[7]  The court later denied Caliste's written motion to reconsider and reduce the sentence.[8]

On direct appeal to the Louisiana First Circuit, Caliste asserted the following errors through the same retained counsel:[9]  (1) The state trial court erred in denying the

---

[4]Caliste, 2010 WL 4272854, at *1 n.1; Hinkel, No. 2010-KA-1151, 2011 WL 2135192, at *1 n.1 (La. App. 1st Cir. Feb. 2, 2011); St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2010-KA-0650, p. 2, n.1, 10/29/10; St. Rec. Vol. 1 of 4, Trial Minutes, 7/28/09; Trial Transcript, 7/28/09; Trial Minutes, 7/29/09; Jury Verdict, 7/29/09; St. Rec. Vol. 2 of 4, Trial Transcript (continued), 7/28/09; Trial Transcript, 7/29/09.

[5]Hinkel, 2011 WL 2135192, at *1.

[6]St. Rec. Vol. 1 of 4, Multiple Bill Hearing Minutes, 1/22/10; Motion for New Trial, 7/29/09; Supplemental Motion for New Trial, 11/9/09; Motion to Modify Verdict, 11/9/09; St. Rec. Vol. 2 of 4, Multiple Bill Hearing Transcript, 1/22/10.

[7]St. Rec. Vol. 1 of 4, Multiple Bill Hearing Minutes, 1/22/10; Reasons for Judgment, 1/26/10; Multiple Bill, 11/3/09; Amendment to Multiple Offender Bill, 12/10/09; St. Rec. Vol. 2 of 4, Multiple Bill Hearing Transcript, 1/22/10.

[8]St. Rec. Vol. 1 of 4, Trial Court Order, 2/20/10; Motion to Reconsider Sentence, 2/20/10.

[9]St. Rec. Vol. 4 of 4, Appeal Brief, 2010-KA-0650, 5/20/10; Reply Brief, 2010-KA-0650, 7/28/10.

motion and supplemental motion for new trial based on the failure to notify him of his right to conflict-free counsel in that his counsel had represented both defendants in a joint trial, thus prejudicing Caliste's defense theory, and the last-minute substitution of the public defender resulted in an ill-prepared trial attorney. (2) The sentence imposed is excessive.  The Louisiana First Circuit affirmed the conviction, habitual offender adjudication and the sentence, finding no merit in the claims.

The Louisiana Supreme Court denied Caliste's subsequent writ application without stated reasons on April 8, 2011.[10]  Caliste's conviction became final ninety (90) days later, on July 7, 2012, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

Eight months later, on December 12, 2011, Caliste's newly retained counsel filed an application for post-conviction relief in the state trial court asserting the following claims:[11] (1) He was constructively denied effective assistance of counsel when the trial court denied his motion to continue trial. (2) He was denied the right to his choice of

---

[10]State v. Caliste, 61 So.3d 684 (La. 2011); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2010-K-2615, 4/8/11; St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, unfiled copy (dated 11/24/10).

[11]St. Rec. Vol. 3 of 4, Uniform Application for Post-Conviction Relief, 12/12/11.

counsel because the trial court denied the motion to continue trial. (3) He was denied effective assistance of counsel because his trial counsel failed to investigate the case and present a defense. (4) He was denied effective assistance of counsel when his trial counsel failed to subject the State's case to meaningful adversarial testing. (5) He was denied effective assistance of counsel because counsel's dual representation caused conflicts of interest and divided loyalties. (6) He was denied effective assistance of counsel when his appellate counsel failed to challenge the sufficiency of the evidence. (7) He was denied effective assistance of counsel when appellate counsel failed to assign error to challenge the constructive denial of trial counsel. (8) He was denied effective assistance of counsel when appellate counsel failed to challenge the multiple bill proceedings.

After the State responded, the state trial court denied Caliste's application on February 17, 2012, finding that ineffective assistance of appellate counsel claims related to the multiple offender adjudication were not appropriate for post-conviction review, citing La. Code Crim. P. art. 930.3 and State v. Cotton, 45 So.3d 1030 (La. 2010), and finding no merit in any of the remaining claims.[12] Caliste's subsequent counsel filed writ

---

[12]St. Rec. Vol. 3 of 4, Order and Reasons, 2/17/12; State's Answer, 12/28/11.

applications to both the Louisiana First Circuit and the Louisiana Supreme Court, and they were denied without stated reasons.[13]

## II.   FEDERAL HABEAS PETITION

On September 3, 2013, Caliste's retained counsel filed this petition for federal habeas corpus relief in which he asserts the following grounds for relief:[14] (1) He was constructively denied effective assistance of trial counsel because the trial court denied his motion to continue trial. (2) He was denied the right to his choice of trial counsel because the trial court denied the motion to continue trial. (3) He was denied effective assistance of counsel because his trial counsel failed to investigate the case and present a defense. (4) He was denied effective assistance of counsel when his trial counsel failed to subject the State's case to meaningful adversarial testing. (5) He was denied effective assistance of counsel because of trial counsel's dual representation, conflicts of interest and divided loyalties. (6) He was denied effective assistance of counsel when his appellate counsel failed to challenge the sufficiency of the evidence. (7) He was denied effective assistance of counsel when appellate counsel failed to assign error to the constructive denial of trial counsel. (8) He was denied effective assistance of counsel

---

[13]State v. Caliste, 108 So.3d 783 (La.), recon. denied, 116 So.3d 657 (La. 2013); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2012-KP-1648, 3/1/13; La. S. Ct. Writ Application, 12-KP-1648, unfiled copy (dated 7/16/12); Motion for Reconsideration, 12-KP-1648, 3/18/13; St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2012-KP-1648, 5/24/13; 1st Cir. Order, 2012-KW-0590, 6/18/12.

[14]Rec. Doc. No. 1.

when appellate counsel failed to challenge the multiple bill proceedings. (9) The state trial court erred in failing to hold an evidentiary hearing in connection with his state application for post-conviction relief.

The State filed an answer and memorandum in opposition to Caliste's petition, conceding its timely filing and exhaustion of state court remedies.[15]  The State argues that Caliste's claims fail to present a basis for federal habeas corpus relief and that any claims of ineffective assistance of counsel related to the habitual offender proceedings are procedurally barred from federal review.

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[16] and applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Caliste's petition, which was filed by counsel on September 3, 2013.

_____

[15]Rec. Doc. No. 11, pp. 2-4.

[16]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and I find that Caliste's petition was timely filed and his claims are exhausted. As noted in the State's opposition, the state trial court denied relief as to all claims and imposed a procedural bar to any claim related to assistance of counsel at the habitual offender proceedings. The state trial court's ruling was the last reasoned state court opinion, and the higher courts denied relief without stated reasons. See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

In this court, however, Caliste has not challenged the assistance of his counsel during the multiple offender proceedings. He instead has asserted a claim of ineffective assistance of appellate counsel in failing to raise on direct appeal a challenge to the sufficiency of the evidence at the multiple offender proceedings. Although this claim was raised, the state trial court did not specifically address the issue in its order denying the entirety of Caliste's state application for post-conviction relief. Nevertheless, because Caliste has not raised a claim in this court arising from the multiple offender proceeding itself, I see no basis to apply the procedural bar asserted by the State. Instead,

8

I will address the substance of the ineffective assistance of appellate counsel claims, which the State alternatively argues is without merit.

IV.   STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

9

849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the
> state court arrives at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case differently than this Court
> has on a set of materially indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.    EVIDENTIARY HEARING NOT WARRANTED (CLAIM NO. 9)

Caliste claims that the state trial court erred in denying his post-conviction application without an evidentiary hearing.  This claim does not entitle him to federal habeas corpus review or relief.  It is well settled that "infirmities in State habeas proceedings do not constitute grounds for relief in federal court." Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001).  An attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself, which is the issue to be addressed in federal habeas cases. Id. at 320; Drevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999); Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 402-403 (2001) (no constitutional mandate that states provide post-conviction review) (citing Pennsylvania v. Finley, 481 U.S. 551, 557 (1987) (no constitutional right to state post-conviction review)).

In addition, to whatever extent, if any, that Caliste may be requesting a federal evidentiary hearing, his request must be denied.  As discussed by the Supreme Court in Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1400-01 (2011), the decision to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of Section 2254(e)(2), which restricts evidentiary hearings to those instances where the claim relies on a new rule of law retroactively applied on collateral review for which the predicate could not have been previously discovered with due diligence and where the

facts would be sufficient to undermine a guilty verdict by clear and convincing evidence. The <u>Cullen</u> Court recognized that where these requirements are not met, evidence presented for the first time may not be considered on federal habeas review to address the merits of the claims under Section 2254(d)(1).  <u>Id</u>.

Thus, this court is limited to review only of the evidence and record that was before the state courts that reviewed the merits of the claim at issue.  <u>Cullen</u>, 131 S. Ct. at 1400; <u>Blue v. Thaler</u>, 665 F.3d 647, 656 (5th Cir. 2011); <u>Gallow v. Cooper</u>,  505 F. App'x 285, 295-96 (5th Cir. 2012); <u>Thomas v. Thaler</u>, No. 12-50280, 2013 WL 1297269, at *4-*5 (5th Cir. Apr. 2, 2013).  In this case, Caliste has not based his claims on a new, retroactive rule of law under the provisions of Section 2254(e)(2).  He has made no showing of entitlement to relief from his conviction by clear and convincing evidence undermining his guilt.  For the reasons discussed below, Caliste has failed to establish his entitlement to federal habeas relief.   Therefore, there is no basis to grant an evidentiary hearing in this case.

## VI.   DENIAL OF THE MOTION TO CONTINUE TRIAL (CLAIMS NOS. 1 and 2)

Caliste argues that the state trial court erred in denying the defense motion to continue the trial, resulting in denial of his Sixth Amendment right to effective counsel. Specifically, Caliste claims that he was forced to go to trial with unprepared appointed counsel, and he was prevented from hiring counsel of his choice.

Caliste's retained counsel asserted this same issue on post-conviction review. The state trial court denied relief, finding no error in denial of the motion and citing Louisiana law and Wheat v. United States, 486 U.S. 153 (1988). This was the last reasoned opinion on the issue. Ylst, 501 U.S. at 802.

In addressing a similar claim raised by a state defendant in a federal habeas petition, the United States Fifth Circuit set forth the following standards of review:

> Accordingly, the issue [petitioner] raises is not simply whether the district court abused its discretion in denying her motion for a continuance. The issue is the effect the denial of the continuance had on her right to counsel. When a denial of a continuance is the basis for a habeas petition, the petitioner must show an abuse of discretion that was so arbitrary and fundamentally unfair as to violate the constitutional principles of due process. Skillern v. Estelle, 720 F.2d 839, 850 (5th Cir. 1983). Accordingly, to prevail, a petition must show that the failure to grant a continuance harmed the defense. United States v. Pollani, 146 F.3d 269, 272 (5th Cir. 1998).

Newton v. Dretke, 371 F.3d 250, 255 (5th Cir. 2004).

Thus, it is not enough for a habeas petitioner to allege that the state trial court abused its discretion. The petitioner must establish actual prejudice by showing that there is a reasonable probability that the verdict might have been different had the continuance been granted. See Schrader v. Whitley, 904 F.2d 282, 288 (5th Cir. 1990) ("If abuse of discretion is demonstrated, the petitioner must sustain the burden common to due process claims that there is a reasonable probability that the verdict might have

been different had the trial been properly conducted . . . ." (internal quotation marks omitted)).

The question of fundamental fairness under the Due Process Clause presents a mixed question of law and fact.  Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000).  This court must therefore determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent.

The state court record reflects that both Caliste and Hinkel were represented by the indigent defender's office throughout the pretrial proceedings.  On July 27, 2009, the day trial was set to begin, Caliste addressed the state trial court and advised the judge that he had hired attorney Tim Upton to represent both him and Hinkel.[17]  Upton was not present at the hearing.  Caliste indicated that "he just told me there was going to be a continuance and he's in a hearing, or something."[18]  The trial judge told Caliste that there was no continuance and that the case would proceed to "priority trial."[19]

> If Mr. Upton wants to enroll in the case and help try the case today, then I don't have any problem with that; but I'm not going to grant a continuance on that because it's been set for some time as a priority case and we're ready to start.

---

[17]St. Rec. Vol. 1 of 4, Hearing Transcript, p. 2, 7/27/09.

[18]Id., p. 2.

[19]Id.

After this discussion, the judge told Caliste and Hinkel to remain in the courtroom until the court was ready to call the case.  During the break, however, Caliste and Hinkel apparently left the courtroom and were detained by officials after they were caught heading to the elevator.[20]  As a result of this incident, the State moved to revoke defendants' bonds during trial.  The trial judge expressed his concerns "about these defendants appearing and staying in court," and therefore recalled the bonds and remanded Caliste and Hinkel to the parish jail during trial.[21]

Immediately after this ruling, Caliste and Hinkel's appointed counsel moved for a  trial continuance.[22]  Counsel argued that the State had not provided him with a copy of a surveillance video from Walmart on July 23, 2009, until the Thursday before the Monday trial commencement.  The focus of the continuance motion, however, was not the video but fingerprint evidence counsel had just received that day.  Counsel argued that the late disclosure affected his ability to defend against the valuation of the stolen

---

[20]Id., p. 4.

[21]Id., p. 5.

[22]Id., p. 5.

merchandise, none of which had been recovered, which he deemed the critical difference

between a misdemeanor and a felony charge.[23]  Counsel also argued:[24]

> The defense needs time to review the evidence and consult possible witnesses and possibly call as [sic] defense expert witnesses.  Due to these issues, an adequate preparation cannot be made for this defense, and as such we would ask that a continuance be granted.
> Furthermore, defendants have a right to counsel.  And defendants have expressed to myself and several other attorneys present that they are both able to afford and wish to have private counsel in this matter.
> Thus, for all these stated reasons, I must make a motion for a continuance.

The State responded that the fingerprint evidence was for identification purposes

only and was actually cumulative of the video evidence already provided to the defense.[25]

The court denied the motion to continue, finding that the evidence was "appropriate to

go forward with" and because the case had been a priority trial setting for some time.[26]

On the next day, before any evidence was presented and after the court denied

defense motions to suppress and exclude evidence, Caliste again addressed the court:[27]

> Your Honor, we are not prepared.  I mean, I had a paid lawyer and everything.  We are just not prepared, Your Honor.  I'm not worried about being released.  If you could just give us some time to prepare our case.  That's all I'm asking, Your Honor.

---

[23]Id., pp. 5, 8.

[24]Id., pp. 5-6.

[25]Id., pp. 6-10.

[26]Id., p. 10.

[27]St. Rec. Vol. 1 of 4, Trial Transcript, p. 11, 7/28/09.

The court denied this request, noting that the matter had been resolved the day before and that the defense had been given more than adequate time to prepare its case.[28] The court also quelled Caliste's outburst about his unwillingness and unpreparedness to go to trial, which he made after the jury entered the courtroom.[29]

In this federal habeas petition, Caliste makes no showing that the verdict would have been different had the request for a continuance been granted.  Instead, he argues generally that he was constructively denied counsel and the right to counsel of his choosing when the continuance was denied.  Under either theory, however, Caliste has failed to establish any violation of constitutional rights, including the fundamental fairness aspect of the Due Process Clause, for the following reasons.

    A.    Constructive Denial of Counsel

Caliste argues that he was forced to go to trial with unprepared appointed counsel when the state trial court denied the defense motion to continue trial.  He argues that this amounted to the constructive denial of counsel under United States v. Cronic, 466 U.S. 648 (1984), and its progeny because his appointed counsel was not prepared to defend against evidence disclosed late by the State.

---

[28]Id., pp. 14-15.

[29]Id., pp. 15-16.

The Supreme Court has recognized that "[i]n certain Sixth Amendment contexts, prejudice is presumed."  Strickland v. Washington, 466 U.S. 668, 692 (1984).  In this category, "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.  So are various kinds of state interference with counsel's assistance."  Id. at 692 (citing Cronic, 466 U.S. at 659 & n.25).

In Cronic, the Supreme Court held that a defendant may be constructively denied counsel, even though an attorney had been appointed to represent him.  The Cronic Court recognized that the performance of counsel may be so inadequate as to constitute no assistance of counsel at all, despite the physical presence of an attorney at the proceeding.  Cronic, 466 U.S. at 654 n. 11.  The Cronic presumption of prejudice arises in circumstances where: (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing"; or (3) counsel "is called upon to render assistance where competent counsel very likely could not."  Cronic, 466 U.S. at 658-59 (citations omitted).  Only in these "circumstances of magnitude" may "the likelihood that the verdict is unreliable [be] so high" that a constitutional violation may be found.  Mickens v. Taylor, 535 U.S. 162, 166 (2002).

The Supreme Court has also emphasized that for Cronic to apply "the attorney's failure must be complete."  Bell, 535U.S. at 697.  "For purposes of distinguishing

18

between the rule of Strickland and that of Cronic," the Supreme Court held that a case does not come under Cronic merely because counsel failed to "oppose the prosecution . . . at specific points" in the proceeding. Bell, 535 U.S. at 697. The distinction between counsel's failure to oppose the prosecution entirely and counsel's failure to do so at certain points is a "difference . . . not of degree but of kind." Bell, 535 U.S. at 697. The Cronic standard applies only when counsel has entirely failed to challenge the prosecution's case. Id. at 697; Riddle v. Cockrell, 288 F.3d 713, 718 (5th Cir. 2002) ("constructive denial of counsel" sufficient to support a presumption of prejudice arises only when counsel was absent from the courtroom, there was an actual conflict of interest, or there was official interference with the defense); Mayo v. Cockrell, 287 F.3d 336, 340 n.3 (5th Cir. 2002); Burdine v. Johnson, 262 F.3d 336, 344 n.4 (5th Cir. 2001).

The petitioner has the burden to show that he was constructively denied counsel. Childress v. Johnson, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997). "It is not enough for the defendant to show mere 'shoddy representation' or to prove the existence of 'errors, omissions, or strategic blunders' by counsel. Bad lawyering, regardless of how bad, does not support the [per se] presumption of prejudice." Johnson v. Cockrell, 301 F.3d 234, 238-39 (5th Cir. 2002) (citing Jackson v. Johnson, 150 F.3d 520, 525 (5th Cir. 1998) (quoting Childress, 103 F.3d at 1228-29).

19

The issue of the constructive denial of counsel under <u>Cronic</u> is a mixed question of law and fact.  <u>French v. Jones</u>, 225 F.3d 658, 2000 WL 1033021, at *3 (6th Cir. Jul. 18, 2000) (Table, Text in Westlaw).  Thus, the question before this court is whether the state courts' denial of relief on this issue was contrary to or an unreasonable application of United States Supreme Court precedent.

As indicated above, the state courts' denial of relief on this issue was not specifically based on <u>Cronic</u>.  The court instead addressed Caliste's ineffective assistance of counsel claims under the standards of <u>Strickland</u> itself based on the actual performance of his counsel.  Nevertheless, Caliste has not shown error in the application of that standard or that his claim should have been evaluated or would have been evaluated differently under the <u>Cronic</u> presumption of prejudice.

The state court record reflects that Caliste's appointed trial counsel actively challenged the State's evidence throughout the trial despite denial of the motion to continue.  As addressed in greater detail below under <u>Strickland</u>, the transcripts of the state court proceedings demonstrate that counsel was fully familiar with the case and adequately prepared to challenge the State's evidence, including the video and fingerprint evidence.  There is nothing in this record to suggest that Caliste's trial counsel was "inert" in his representation at trial, <u>Jackson v. Johnson</u>, 150 F.3d at 525, or that counsel's performance was stifled by the state trial court's denial of the motion to

continue in a way that might provide relief under the narrow holding in <u>Cronic</u>. <u>See</u> <u>Hernandez v. Day</u>, 26 F.3d 1118, 1994 WL 286163, *3-*4 (5th Cir. 1994) (Table, Text in Westlaw) (ineffective assistance resulting from counsel's alleged unpreparedness after the state trial court denied a motion to continue trial is addressed under <u>Strickland</u>, not <u>Cronic</u>).

Caliste has not established that he was constructively denied counsel under the <u>Cronic</u> standard. The denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law. His challenges to specific aspects of his counsel's performance will be further addressed below under <u>Strickland</u>.

B.    <u>Denial of Right to Choice of Counsel</u>

Caliste complains that the state trial court's refusal to grant the continuance denied him the right to counsel of his own choosing. He argues that the appointed indigent defenders did not take substantive steps to defend him against the State's charges and that he should have been given the opportunity to hire private counsel.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Wrongful deprivation of choice of counsel is a "structural error" that "pervades the entire trial." <u>United States v. Gonzalez-Lopez</u>, 548 U.S. 140, 150 (2006). As the Supreme Court has recently recognized, "[d]ifferent lawyers do all kinds of things differently, sometimes

'affect[ing] whether and on what terms the defendant . . . plea bargains, or decides instead to go to trial' - and if the latter, possibly affecting whether she gets convicted or what sentence she receives.  So for defendants . . . having the ability to retain the 'counsel [they] believe[ ] to be best' – and who might in fact be superior to any existing alternatives – matters profoundly."  Kaley v. United States, __ U.S. __, 134 S. Ct. 1090, 1102-03 (2014) (footnote and citations omitted).

However, the right to counsel of choice is not absolute.  Gonzalez-Lopez, 548 U.S. at 144.  The Supreme Court recognizes that the right to choose counsel extends to a defendant who does not require appointed counsel.   Wheat, 486 U.S. at 159; Gonzalez-Lopez, 548 U.S. at 144.  "[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." Gonzalez-Lopez, 548 U.S. at 144 (quoting Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624-625 (1989)).  For example, a defendant cannot insist on counsel who is not a member of the proper bar or demand that a court accept his waiver of conflict-free counsel.  Wheat, 486 U.S. at 159-160.

Instead, the Supreme Court recognizes a trial court's "wide latitude in balancing the right to counsel of choice against the needs of fairness . . . [and] against the demands of its calendar."  Gonzalez-Lopez, 548 U.S. at 151-52 (citing Wheat, 486 U.S. at

163–164 and <u>Morris v. Slappy</u>, 461 U.S. 1, 11-12 (1983)).  Thus, a trial court has broad discretion and "power to enforce rules or adhere to practices that determine which attorneys may appear before it, or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel."  <u>Gonzalez-Lopez</u>, 548 U.S. at 151-52. "[T]rial courts must necessarily be wary of last minute requests to change counsel lest they impede the prompt and efficient administration of justice."  <u>United States v. Pineda</u> <u>Pineda</u>, 481 F. App'x 211, 212 (5th Cir. 2012) (quoting <u>McQueen v. Blackburn</u>, 755 F.2d 1174, 1178 (5th Cir. 1985)); <u>United States v. Magee</u>, 741 F.2d 93, 95 (5th Cir. 1984) (holding that "it is within the judge's discretion to deny a change of counsel on the morning of trial if the change would require a continuance.").

The Fifth Circuit recognizes several factors to be considered when a habeas petitioner claims that a state court's denial of a motion for continuance interfered with the fair and reasonable opportunity to obtain particular counsel, including: (1) the length of the requested delay; (2) the availability of an associate adequately prepared to try the case in place of lead counsel; (3) the number of other continuances that have been requested and granted; (4) the balance of convenience or inconvenience to litigants, witnesses, opposing counsel and the court; (5) the legitimacy of the reasons offered for the requested delay, or whether it is dilatory and contrived; (6) any other unique factors. <u>Newton</u>, 371 F.3d at 255 (citing <u>Gandy v. Alabama</u>, 569 F.2d 1318, 1324 (5th Cir.

1978)).   In this case, Caliste was provided with appointed counsel and made no indication of his ability to pay counsel until the day before trial. As noted above, Caliste's counsel offered two reasons for the requested continuance: the need to evaluate new fingerprint evidence and defendants' indication that they wanted to hire counsel. Caliste also separately indicated to the state trial court that he was not prepared for trial, stating only that he had hired other counsel.

The record supports the state court's reasons for denying the motions and the request for post-conviction relief. Caliste did not complain before the trial date about the representation provided pretrial by the public defender's office. The record establishes that appointed counsel presented a viable and competent defense to the charges at trial. In addition, the trial court did not refuse Caliste the opportunity to hire counsel.  In fact, according to Caliste, he had already hired counsel.  The state trial court invited Caliste to have his hired counsel appear for trial as scheduled, although no lawyer ever appeared on his behalf other than appointed counsel.  To protect Caliste's rights, the public defender remained appointed for trial.  In addition, the priority trial setting was an appropriate reason to go forward with trial under the standards set forth in Wheat.

The record also reflects that neither Caliste nor his appointed counsel ever specified a particular length of any proposed continuance.  Caliste never explained how he or his counsel might be unprepared for trial; he simply repeated that general

declaration.  The state trial court also resolved that the new fingerprint evidence did not unduly prejudice the defense and was merely cumulative of other evidence already provided, leaving no need for a continuance.  In addition, the state trial court expressed grave concerns about the apparent escape attempt by Caliste and Hinkel when it became clear that their trial would proceed.  The court's concern for the potential for escape was a legitimate consideration in its decision to proceed with trial as scheduled.

Considering these factors and circumstances of the case, Caliste has not established that the failure to grant the continuance denied his right to choice of counsel.  For all of the foregoing reasons, Caliste has not established a constitutional error in the state courts' denial of the trial continuance.  He has not shown that the failure to grant the continuance harmed the defense, amounted to constructive denial of counsel or the denial of the right to choice of counsel.  The state courts' denial of relief was neither contrary to nor an unreasonable application of federal law.  Caliste is not entitled to relief on this claim.

## VII.   EFFECTIVE ASSISTANCE OF COUNSEL (CLAIMS NOS. 3-8)

Caliste has asserted several claims of ineffective assistance of counsel at trial and on direct appeal.  He argues that his trial counsel was unprepared and burdened by dual representation, conflicts of interest and divided loyalties.  He further contends that his appointed trial counsel provided ineffective assistance in failing to investigate the case,

present a defense and subject the State's case to meaningful adversarial testing.  As for appellate counsel, Caliste contends that his attorney was ineffective on appeal in failing to raise insufficiency of the evidence at trial and in the multiple offender proceedings and the constructive denial of counsel when the continuance was denied.  On post-conviction review, the state trial court found these claims meritless under the Strickland standards and related state law.  The higher state courts also denied relief without further reasons.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in Strickland, 466 U.S. at 688, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.  Id. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 792 (2011) (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom."  Harrington, 131 S. Ct. at 788.  The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The

27

> Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under Section 2254(d) is "doubly deferential." Cullen, 131 S. Ct. at 1403 (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690; Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally

deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

A.    Trial Counsel

In the motion for new trial, Caliste's appointed trial counsel argued, among other things, that the state trial court erred in failing to notify defendants of their right to separate counsel. In a supplement to the motion, Caliste's retained post-trial and appellate counsel, Robert Glass, further argued that the failure to appoint separate counsel prevented trial counsel from arguing different theories of culpability and Caliste's minimal involvement in the crime.

The state trial court denied the motions, noting that there was no right to separate counsel when there was no conflict in the defenses.  The court found no conflict in Caliste's case based on the overwhelming facts and evidence showing the participation of both defendants in the crime.  The court further noted that Caliste never asked for separate counsel, only different counsel who would still represent both defendants.

On direct appeal, Caliste's counsel asserted error in the denial of the motion and supplemental motion for new trial based on these same arguments.  In addition, counsel argued that the state trial court was aware of potential problems with appointed trial counsel, including multiple substitutions by the indigent defender's office and

unpreparedness for trial caused by counsel's late receipt of video and fingerprint evidence from the State. The Louisiana First Circuit found the claim meritless because there was no pretrial objection raising a conflict of interest and no showing of an actual conflict or prejudice resulting from the joint representation, especially in light of both defendants' roles as principals in the crime.

Caliste's retained post-conviction counsel (his current federal habeas counsel) relied on these same and other arguments to support a claim of ineffective assistance of counsel on post-conviction review. At that time, counsel argued that appointed trial counsel failed adequately to investigate the case and present a defense. He claimed that trial counsel did not challenge the relevance of certain evidence or question the State's representation that some evidence was discarded. Counsel further argued that appointed trial counsel had not been assigned the case for any length of time, had never met with the defendants and appeared confused as to what, if any, pretrial motions had been filed. Finally, counsel argued that appointed counsel was not conflict-free and that the dual representation caused divided loyalties and rendered him ineffective.

The state trial court declined to revisit the dual representation and conflict of interest arguments, noting that they had been fully addressed on direct appeal, citing La.

Code Crim. P. art. 930.4.[30] The trial court denied the remainder of the claims under the Strickland standards.  The court determined that Caliste failed to present any evidence of his innocence that could have been discovered through additional investigation, noting the "compelling and overwhelming" evidence of his guilt.  In addition, the court noted Caliste's failure to identify any evidence that would have been excluded by motion to suppress and that would have altered the conviction.  This was the last reasoned decision on the claims.  Ylst, 501 U.S. at 802.

As in the state courts, Caliste now argues that his appointed trial counsel failed to investigate the case and was unprepared adequately to present a defense.  "'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" (emphasis added, citation omitted) Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011).  A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown.  Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696, recognizing that some

---

[30]La. Code Crim. P. art. 930.4(A) bars post-conviction review of claims "fully litigated" on direct appeal. Bennett v. Whitley, 41 F.3d 1581 (5th Cir.1994). The rule assumes that the claims were not new or different from those previously litigated on appeal. Id. at 1583. However, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." Id. The bar does not preclude habeas review of the claims. The Court simply "look[s]-through" the ruling on collateral review and considers the ruling on direct appeal. Id. at 1582-83.

evidence is required to show that "the decision reached would reasonably likely have been different."). Rather, to prevail on such claim, the petitioner must provide factual support as to what <u>exculpatory</u> evidence further investigation would have revealed. <u>Moawad</u>, 143 F.3d at 948; <u>Brown v. Dretke</u>, 419 F.3d 365, 375 (5th Cir. 2005); <u>Davis v. Cain</u>, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

Caliste in no way meets this standard. He has identified <u>no</u> exculpatory evidence that would have been discoverable through more pretrial investigation or that was not already part of the trial, <u>e.g.</u>, the alleged "fuzzy" video and lack of connexity to most of the stolen cameras. Just as in the state courts, Caliste's arguments that counsel was unprepared are conclusory and unsupported by the record.

Contrary to Caliste's arguments, the record does not clearly reflect how long trial counsel had been appointed to the case or that it was not a sufficient amount of time to prepare for trial. The record confirms that the public defender's office, from which Caliste's trial counsel came, had been assigned to the case since arraignment and the lawyers of that office had been adequately prepared for each phase of the proceedings. Caliste offers nothing but self-serving argument that trial counsel did not meet with defendants before trial or that he needed to meet with counsel for effective representation. These conclusory allegations are not adequate to establish ineffective

assistance of counsel.  See Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); Brown, 419 F.3d at 375; Moawad, 143 F.3d at 948; United States v. Daniels, No. 08-104, 2011 WL 999529, at *7 (E.D. La. Mar. 18, 2011) (citing Moawad, 143 F.3d at 948; Brown, 419 F.3d at 375; and Kron v. Tanner, No. 09-7572, 2010 WL 3488227, at *11 n.26 (E.D. La. May 4, 2010)).

The state court record reflects that Caliste's counsel vigorously and meaningfully challenged the State's evidence at trial.  The record does not reflect that trial counsel was confused about the filing of pretrial motions to suppress.  Counsel advised the court that it had not ruled on his motions to suppress scissors and a sales receipt that the State intended to offer in evidence.  The State responded as if the motions were in fact pending, arguing that there was a warrant for the seizure of the scissors found in the car and that the customer sales receipt that had been seized was a duplicate of the receipt in Walmart's records.  The court, however, could not locate the written motion in its own record.  Nevertheless, having heard counsel's oral statements, the court denied the motions to suppress.  Thus, the failure to locate the motion papers is insignificant because counsel was able orally to raise and obtain a ruling on the suppression issue.  Counsel also separately urged a motion to suppress the fingerprint evidence given to him the day before, and that motion also was denied.

As for challenging the State's trial evidence, counsel cross-examined the State's witnesses in great detail about the empty camera boxes, the camera values and the security videos in an attempt to cast doubt upon the State's position about the extent of the theft and the valuation of the cameras.  Counsel questioned Brandon Brown, the Walmart security officer, about the surveillance video, highlighting that the video did not clearly show the defendants in possession of the missing cameras.  He also asked Brown about the number of camera boxes found and where the boxes were located compared to scenes in the videos.[31]  Brown testified that about 14 cameras were missing from inventory, although they were not all seen on the video and not all of the boxes were recovered.  Counsel also elicited testimony from Brown that no cameras or accessories were recovered in the store, on the defendants themselves, in their car or by other means.[32]

Defense counsel also questioned Detective Ralph Morel of the Slidell Police Department to establish that the police recovered only six camera boxes of the 14 Brown said were missing and the 12 that appeared to be cut from a display rack shown in the videos.[33]  Defense counsel elicited from both Brown and Morel concessions that there

---

[31]St. Rec. Vol. 2 of 4, Trial Transcript (continued), pp. 50-54, 7/28/09.

[32]Id., at pp. 52-54.

[33]Id., at pp. 65-66.

was no video or other direct tangible evidence that the cameras and all of the accessories had been removed from the store by either defendant.[34]   Counsel used this information to argue to the jury that the State failed to prove that defendants walked out of the store with 14 cameras and all of the accessories.[35]

Defense counsel also elicited testimony from both Detective Shawn Bartley and Sergeant Bobby Campbell that there were only two fingerprints located on two of the recovered boxes, one matching Hinkel and one matching Caliste.[36]   Counsel later argued to the jury that at best the State could link Caliste and Hinkel to only two missing cameras worth less than $300 that were never found outside of the store.[37]   Counsel unsuccessfully urged the jury to return a verdict of attempted theft under $300, a lesser charge.

Counsel also called Myra Ashmore, Caliste's mother and Hinkel's aunt, who was with them at Walmart on the night of the alleged theft and on the next day when they were arrested.[38]   On counsel's questioning, Ashmore testified that she consented to the search of her car and home and gave a voluntary statement to police.  She also provided

---

[34]Id., at pp. 52-54 (Brown), pp. 66-67 (Morel).

[35]St. Rec. Vol. 2 of 3, Trial Transcript, pp. 35-36, 7/29/09.

[36]St. Rec. Vol. 2 of 4, Trial Transcript (continued), p. 73 (Bartley), p. 92 (Campbell), 7/28/09.

[37]St. Rec. Vol. 2 of 3, Trial Transcript, pp. 34-35, 7/29/09.

[38]Id., at pp. 6-9.

pro-defense testimony that she did not see Caliste or Hinkel with any cameras or accessories.  When questioned by the prosecutor, Ashmore testified that the scissors had been in her car for months and may have belonged to her grandchildren.[39]

The record is clear that, starting with opening arguments, defense counsel repeatedly emphasized to the jury that the State could not establish a theft of more than just two cameras valued at less than $300 or that the defendants actually stole the cameras.[40]  The fact that the jury did not believe the defense does not render counsel's performance constitutionally deficient.  See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Strickland, 466 U.S. at 689 (citations omitted).  The record reflects that trial counsel made a reasonably vigorous challenge to the State's strong evidence that included a video of Caliste and Hinkel involved in the theft of multiple cameras valued at more than $500.

Caliste has not established that his counsel's dual representation of him and his co-defendant impacted his performance or created conflicts of interest and divided loyalties.

---

[39] Id., pp. 15-16, 24.

[40] St. Rec. Vol. 1 of 4, Trial Transcript, p. 26-27, 7/28/09.

The Supreme Court has recognized that prejudice may occur when an attorney actively represents conflicting interests.  Mickens, 535 U.S. at 166.  Thus, automatic reversal is required when counsel is forced to represent co-defendants over his timely objection to the joint representation.  Holloway v. Arkansas, 435 U.S. 475 485-88 (1978).  However, when defendant does not directly object to joint representation, the Holloway presumption of prejudice does not apply.  Mickens, 535 U.S. at 168; Lee v. Cain, 519 F. App'x 869 (5th Cir. 2013).

Instead, a petitioner must show both that there was an actual conflict of interest and that the conflict adversely affected trial counsel's representation of his interests. Cuyler v. Sullivan  446 U.S. 335, 348 (1980).  The Supreme Court has made clear that "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." Sullivan, 446 U.S. at 350.  "An adverse effect on counsel's performance may be shown with evidence that counsel's judgment was actually fettered by concern over the effect of certain trial decisions on other clients."  Perillo v. Johnson, 205 F.3d 775, 781 (5th Cir. 2000) (internal quotation marks omitted) (emphasis added).

In this case, neither trial counsel nor Caliste objected to the joint representation. Counsel simply pointed out to the court that Caliste and Hinkel wanted to hire other counsel.  The record contains no indication that Caliste ever asked for separate counsel

or reported a conflict of interest to the trial court.  Instead, Caliste <u>clearly</u> indicated to the

state trial court that he had hired <u>one</u> attorney to represent <u>both</u> defendants:  "Mr. Tim

Upton, I hired him to represent me <u>and</u> Mr. Hinkel."[41] (emphasis added).  This issue was

also addressed by the state trial court during his ruling on Caliste's motions for new trial:

> BY THE COURT:
>       I just - - I'm going to note for the record, and again, there was never any conflict raised.  Would you like to respond sir?
>
> BY MR. GLASS:
>       Yes, I would.  If the Court will recall, Mr. Caliste was trying to get an independent lawyer at the time this case was called for trial, and the Court denied the delay for him to do that, so he was attempting to assert his right which he has to an independent lawyer from a codefendant. [. . .]
>       So I think as far as Mr. Caliste is concerned, the fact that he was attempting to get a private lawyer at the time raised the issue in a more significant way than is typical in cases.
>
>                                         [. . .]
>
> BY THE COURT:
>       Once again, the evidence in this case - - I'm going to start out by saying the evidence in this case was overwhelming.  The video evidence in this case was compelling.  It clearly showed both of these defendants taking cameras in a brazen fashion from a secured area of the Wal-Mart.  There was never any issue of a conflict between the positions of these defendants raised.
>       In fact, my recollection of the events on the day of trial was not that Mr. Caliste asserted that he wanted separate counsel from Mr. Hainkel [sic] but that they just both wanted other counsel.  In other words, the two of them together wanted to get another lawyer because they didn't want the public defender lawyer, and I denied that request.

---

[41]St. Rec. Vol. 1 of 4, Hearing Transcript, p. 2, 7/27/09.

Any suggestion that Caliste sought independent counsel separate from Hinkel or asserted that there was a conflict in their defenses is not supported by the record.

In addition, Caliste has failed to identify any actual conflict in counsel's presentation of the defense.  As noted by the state trial court, the evidence of the theft of multiple cameras by both defendants was overwhelming and in plain view on the video tapes shown to the jury.  As noted above, trial counsel focused the defense on raising doubt as to the involvement of both defendants in the theft or attempted theft, repeatedly referring the jury to the lack of fingerprints, the fact that the cameras and accessories were not seen on the video or recovered, a lack of direct evidence that the defendants possessed the cameras and accessories or removed anything from the store and, most importantly, the low value of the only two cameras in the two boxes that bore the defendants' fingerprints.

The defenses were not in conflict.  As noted by the state trial court, Louisiana law established that the two defendants working together were principals to the crime and jointly culpable.[42]  The same finding was made by the Louisiana First Circuit on direct appeal when addressing Caliste's conflict of interest argument related to denial of the motion to continue.[43]

---

[42]St. Rec. Vol. 3 of 4, Order and Reasons, 2/17/12.

[43]Caliste, 2010 WL 4272854, at *5; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2010-KA-0650, pp. 8-9, 10/29/10.

Contrary to Caliste's argument, the State did not argue to the jury that one defendant stole all the cameras while the other acted only as a look-out.  The State argued that the defendants worked together to obtain the secured camera boxes, to remove the cameras from the boxes and to stash the empty boxes around the store.  Based on this record, Caliste has not met his initial burden of showing "that his counsel actively represented conflicting interests."  Sullivan, 446 U.S. at 350.

For the foregoing reasons, Caliste has not met either prong of the Strickland test with regard to the assistance provided by his appointed trial counsel.  He has not established that the state courts' denial of relief was contrary to or an unreasonable application of Strickland or its progeny.  He is not entitled to relief on this claim.

B.     Appellate Counsel

Caliste alleges that his retained appellate counsel provided ineffective assistance when he failed to argue on appeal that the evidence was insufficient to support the trial verdict and the multiple offender adjudication and that he was constructively denied counsel when his motion to continue the trial was denied.

A person convicted of a crime is entitled to effective assistance of counsel in his first appeal of right.  Evitts v. Lucey, 469 U.S. 387, 394 (1985).  The general standard for judging performance of counsel established in Strickland also applies to claims of ineffective appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285 (2000); Goodwin v.

40

Johnson, 132 F.3d 162, 170 (5th Cir. 1998).  As discussed above, in Strickland the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.  Strickland, 466 U.S. at 697.  More specifically, to prevail on a claim that appellate counsel was constitutionally ineffective, petitioner must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); Smith, 528 U.S. at 285-86.

Effective appellate counsel are not required to assert every nonfrivolous available ground for appeal.  Green, 160 F.3d at 1043 (citing Evitts, 469 U.S. at 394).  On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue every nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  Appellate counsel has the discretion to exclude even a nonfrivolous issue if that issue was unlikely to prevail.  See Anderson v. Quarterman, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal . . . lack merit.  As such, failure to raise these issues

did not prejudice Anderson."); <u>Penson v. Ohio</u>, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); <u>Kossie v. Thaler</u>, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised). Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held ineffective for failure to raise every conceivable issue. <u>Smith</u>, 528 U.S. at 288; <u>Jones</u>, 463 U.S. at 754.

As discussed above, Caliste's claim of constructive denial of counsel is meritless under both <u>Cronic</u> and <u>Strickland</u>. In addition, appellate counsel clearly placed before the state appellate court the arguments that joint representation caused prejudice to Caliste's defense and that his trial counsel was unprepared to attack the State's evidence. These arguments were found meritless by the state appellate court, and no error was found in the denial of the motions to continue trial or for new trial. They were based on exactly the same theories Caliste claims his appellate counsel should have urged as a constructive denial of counsel claim on appeal. Regardless how these arguments may be labeled, they lack merit. Caliste has not shown that his counsel failed to raise a nonfrivolous or potentially meritorious issue of constructive denial of counsel.

Caliste also cannot establish error or prejudice in his appellate counsel's failure to challenge the sufficiency of the trial evidence.  In evaluating sufficiency of the evidence to support conviction, the state appellate court would have to determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Williams v. Cain, 408 F. App'x 817, 821 (5th Cir. 2011); Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008); State v. Tate, 851 So.2d 921 (La. 2003), cert. denied, 541 U.S. 905 (2004); State v. Cummings, 668 So.2d 1132 (La. 1996); La. Code Crim. P. art. 821.

In Caliste's appeal, the Louisiana First Circuit evaluated the evidence presented to establish the guilt of both defendants working together as principals to the crime and made the following pertinent findings:[44]

> [T]he trial court noted that the evidence overwhelmingly showed that both of the defendants worked together to steal the cameras.  Specifically, the surveillance camera footage showed both men walking together in the store, side-by-side, pulling camera boxes from the aisle and placing them into the same buggy.  They are again shown, one walking behind the other, removing items from the camera aisle.  One places a camera on a shelf and the other grabs it.  One drops a camera on the floor, and the other picks it up.  Both men remained together in the electronics department, in close proximity, for more than thirty minutes.  . . .  The evidence shows that the defendant was a principal to the theft of the cameras taken by the codefendant and equally

---

[44]Caliste, 2010 WL 4272854, at *5; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2010-KA-0650, pp. 8-9, 10/29/10.

culpable in those thefts.  The theft of the cameras was a joint, concerted effort by Caliste and Hinkel.

Thus, the Louisiana First Circuit found the evidence against Caliste sufficient. The same court later made a more extensive review of the sufficiency of the evidence under the Jackson standard in Hinkel's separate appeal based on exactly the same arguments Caliste claims his appellate counsel should have raised.

> In his second assignment of en-or [sic], the defendant argues that the evidence was constitutionally insufficient to support the verdict.  The defendant specifically argues that the State failed to prove that he was guilty of theft over $500.00, noting that his fingerprints were found only on one camera box.  The defendant further contends that the State failed to demonstrate that the amount of stolen merchandise exceeded $500.00.  The defendant also notes that the stolen cameras or camera accessories were never recovered and that the Wal-Mart representative wavered on the actual number of cameras that were stolen.  Finally, the defendant asserts that the State failed to present evidence that the cameras and/or accessories were taken from the store.  [. . .]
>
> Theft is the misappropriation or taking of anything of value which belongs to another, without the consent of the other to the misappropriation or taking, with the intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking.  La. R.S. 14:67A.  All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.  La R.S. 14:24.  However, the defendant's mere presence at the scene is not enough to concern him in the crime.  State v. Neal, 2000-0674, p.12 (La. 6/29/01), 796 So.2d 649, 659, cert. denied, 535 U.S. 940, 122 S. Ct. 1323, 152 L. Ed.2d 231 (2002).  Only those persons who knowingly participate in the planning or execution of a crime may be said to be concerned in its commission, thus making them liable as principals.  A principal may be connected only to those crimes for which he has the requisite mental state. Neal, 2000-0674 at pp. 12-13, 796 So.2d at 659.  It is sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed; however in such a case, it is necessary that the principal actually

44

be aware of the accomplice's intention.  State v. Anderson, 97-1301, p. 3 (La. 2/6/98), 707 So.2d 1223, 1225 (per curiam).

The factual issue of whether there is a "taking" for purposes of a theft concerns whether the offender exerts control over the object adverse to or usurpatory of the owner's dominion.  Under the jurisprudence, it is not always necessary for goods to actually be removed from a store in order to form the basis for a conviction of theft.  The crime of theft is completed upon the exercise of wrongful dominion or unauthorized control of the object of the theft whether or not the item is removed from the general area where it is kept. State v. Bean, 20041527, p. 9 (La. App. 1st Cir. 3/24/05), 899 So.2d 702, 710, writ granted on other grounds, 2005-1106 (La. 3/8/06), 925 So.2d 489, writ denied, 2005-1106 (La. 11/3/06), 940 So.2d 652.

Brandon Brown, loss prevention manager for Wal-Mart, explained that the store places digital cameras in the photo area on a locked peg device requiring an associate to remove the package from the peg.  On November 19, 2008, a store manager informed Brown that several empty camera packages had been recovered.  Two empty camera packages were recovered from the sporting goods area by Brown after he viewed the surveillance footage.  In viewing the video footage for the night before, Brown observed the defendant and Caliste approach the cameras with what appeared to be a small pair of scissors and cut and remove packages from the locked peg. The video surveillance evidence reveals the defendant and Caliste making several trips to the camera aisle and removing several packages together and individually. They can also be observed opening packages, placing their hands in their pockets, and discarding packaging in the sporting goods area. Based on his viewings of the video, Brown was able to discern the combined removal of at least twelve cameras by the defendant and Caliste during their trips on the aisle.  Brown noted that the number may be underestimated, as the removal of two cameras simultaneously would not be readily apparent on the video.  The defendant and [ ] Caliste did not attempt to purchase any cameras when they went to the check-out area with Ashmore.

Brown explained that an on-hand check was performed by the department manager each morning and that the cameras located on the locked pegs were closely guarded and tracked. The on-hand check for November 19th revealed that a total of fourteen cameras were missing with values ranging from $79.84 to $149.84, with a combined total value of $1,377.96. Store associates searched the store for the cameras and they were not recovered. Detective Shawn Bartley, of the Slidell Police Department, examined several of the recovered empty boxes for valuable fingerprint evidence and two of the boxes yielded fingerprint evidence of value. Fingerprint identification and

analysis expert, Sergeant Bobby Campbell (also of the Slidell Police Department), was able to match individual fingerprint evidence to both of the defendant and Caliste. A pair of scissors was recovered from Ashmore's vehicle.

Ashmore, the sole defense witness, testified that she, the defendant, and Caliste went to Wal-Mart on the night in question to purchase a television and that her bank declined the purchase as a precaution, adding that the size of the purchase indicated that her card may have been stolen. She did however purchase $259.00 worth of household items that night that did not include any cameras. She testified that the defendant and Caliste did not take anything without paying for it to her knowledge, and that she did not see them with any camera or camera accessories after that night. Ashmore acknowledged that she shopped separately from the defendant and Caliste on the night in question and was unaware of what the defendant and Caliste were there to purchase. Ashmore stated that she did not know how the scissors got in her vehicle but noted that she had grandchildren. She noted that she was able to complete the purchase of the television the next day after speaking to a bank representative.

As the trier of fact, a jury is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir. 1984). The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 97-2261, p. 5 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987).

A reviewing court is not called upon to decide whether the conviction is contrary to the weight of the evidence. State v. Smith, 600 So.2d 1319, 1324 (La. 1992). We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342, p. 8 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. See State v. Azema, 633 So.2d 723, 727 (La. App. 1st Cir. 1993), writ denied, 94-0141 (La. 4/29/94), 637 So.2d 460; State v. Quinn, 479 So.2d 592, 596 (La.

App. 1st Cir. 1985). The evidence, consisting of video footage of the defendant and Caliste removing numerous packages from the secured pegs in an unauthorized fashion, discarding packaging, and entering their pockets, the inventory taken the next morning showing how many supposed on-hand cameras that were missing, the empty boxes that were recovered, and the fingerprint evidence, supports the conclusion that the defendant and Caliste were non-consensually taking valuable items belonging to another with the intent to permanently deprive the owner. A principal to the crime of theft is held culpable for the entire value of the merchandise. State v. Coleman, 2002-0345, p. 5 (La. App. 5th Cir. 9/18/02), 829 So.2d 468, 472. The evidence clearly shows that the defendant and Caliste knowingly participated in the execution of the crime in a collaborative fashion. The jury reasonably rejected any hypothesis of innocence. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. State v. Calloway, 2007-2306, pp. 1-2 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). Accordingly, after a thorough review of the record, viewing the evidence in the light most favorable to the prosecution, we are convinced that a rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of theft over $500.00. Assignment of error number two lacks merit.

State v. Hinkel, 57 So.3d 609 (La. App. 1st Cir. 2011) (Table); State v. Hinkel, No. 2010-KA-1151, 2011 WL 2135193, at *1-*3 (La. App. 1st Cir. 2/11/11).

Caliste presents nothing that might persuade this court that the Louisiana First Circuit would have reached a different conclusion had Caliste's appellate counsel raised his own sufficiency of the evidence claim. The Louisiana First Circuit found that the joint venture was sufficient to establish the culpability of both men. Again, Caliste has not shown that his counsel failed to raise a nonfrivolous issue on appeal.

Finally, Caliste alleges that his appellate counsel erred in failing to challenge the multiple offender proceedings in the direct appeal.  He argues that his counsel should have asserted that the State failed to prove that he was the same person involved in the predicate convictions or that the prior guilty pleas were constitutionally sound.  He contends that, although his post-trial/appellate counsel challenged the sufficiency of the evidence at the multiple bill hearing, he did not file a "quashal" (sic) before sentencing or raise the issue on appeal.

As noted by Caliste, his counsel objected at the multiple bill hearing to the sufficiency of the submitted evidence to establish him as the same person in the prior offenses.[45]  Based on his objection, the court questioned the State "whether each of those are one and the same person."[46]  Noting that the fingerprint expert was unavailable to testify, the State indicated that each of the exhibits from the four prior convictions contained reference to Caliste's name, his bureau of identification number, his date of birth and his social security number.[47]  One packet contained his photograph matching his Louisiana Identification Card, and most of the packets also contained reference to Caliste's assigned Louisiana Department of Corrections ("DOC") number.  In addition,

---

[45]St. Rec. Vol. 2 of 4, Multiple Bill Hearing Transcript, pp. 7-8, 1/22/10.

[46]Id., p. 12.

[47]Id., pp. 6-7, 12-15.

the DOC pen pack contained reference to all of Caliste's prior convictions with identifying information.

After reviewing each of the exhibit packets and each identification source, the court found the evidence sufficient to establish the prior convictions and Caliste's identity as the same person.[48]  Caliste's counsel objected to the finding, and the matter proceeded to sentencing after waiver of legal delays.  The court also denied Caliste's motion to reconsider the sentence.[49]

In this court, Caliste has not established that his appellate counsel needed to challenge the State's identification evidence in any particular additional way. Caliste argues that matching a name and social security number was insufficient evidence of identity.  Under Louisiana law, however, the State can prove identity of a multiple offender by using "[v]arious methods of proof . . . including testimony of witnesses, expert opinion as to fingerprints, and photographs contained in duly authenticated records." State v. Brown, 82 So.3d 1232, 1234 (La. 2012).  Courts have also recognized that identical driver's license number, sex, race, and date of birth in conviction records are sufficient evidence of identity.  State v. Payton, 810 So.2d 1127, 1130 (La. 2002); State v. White, 130 So.2d 298 (La. 2013). Courts have also held that documents

---

[48]Id., p. 16; St. Rec. Vol. 1 of 4, Reasons for Judgment, 1/26/10.

[49]St. Rec. Vol. 1 of 4, Trial Court Order, 2/10/10; Motion to Reconsider Sentence, 2/20/10.

containing a defendant's "name, race, sex, date of birth, social security number, state prisoner number, Federal Bureau of Investigation (FBI) number, state identification number, and signature of defendant, and master prison record list[ing] defendant's sentencing date, his crime, his term of sentence, and court in which he had been convicted," are adequate proof that a defendant is the same person as the one previously convicted.  State v. Noel, 734 So.2d 168, 170 (La. App. 5th Cir. 1999).

The record clearly establishes that the State provided similar evidence (other than fingerprints) at Caliste's multiple offender hearing.  It was reasonable for appellate counsel not to reassert the objection made at the trial court level to the identification evidence, since the evidence was in fact adequate under Louisiana law, and the claim would not have been successful on appeal.  Caliste has not established any error by his appellate counsel in this regard or that counsel failed to raise a nonfrivolous issue on appeal.

Caliste's claim that counsel erred in failing to assert on appeal that the State failed to present transcripts of the prior guilty pleas, waiver of rights forms, or evidence that the pleas were knowingly and voluntarily entered also lacks merit. The State was not obligated to do so, and appellate counsel had no basis to raise such a claim.

To establish that a defendant is a habitual felony offender under La. Rev. Stat. § 15:529.1, the State is required to prove the existence of a prior felony conviction and that

the defendant is the same person who was convicted of the prior felony.  State v. Shelton, 621 So.2d 769 (La.1993); State v. Staggers, No. 03-KA-655, 2003 WL 22438958 at *5-*6 (La. App. 5th Cir. 2003) (citing State v. Davis, 829 So.2d 554 (La. App. 5th Cir. 2002)); State v. Warfield, No. 37,616-KA, 2003 WL 22439586 at *2-*3 (La. App. 2d Cir. 2003).  Certified copies of court records evidencing prior convictions are sufficient to prove the prior conviction.  Staggers, 2003 WL 22438958 at *6.  As noted above, independent proof, such as matching fingerprints or other vital information of the sort detailed above, is required to show that a defendant is the same person identified in those records.  State v. Walker, 795 So.2d 459, 463 (La. App. 5th Cir. 2001), writ denied, 826 So.2d 1115 (La. 2002).

In Louisiana, the State may introduce certified copies of bills of information, waiver of rights guilty plea forms when available, the docket masters, or minute entries to prove the existence of prior convictions.  State v. Wilson, 956 So.2d 41, 52 (La. App. 4th Cir. 2007).  The Louisiana Supreme Court has also held that, upon presentation of sufficient proof of identity and of the existence of prior convictions, the burden shifts to the defendant to challenge the validity of the underlying convictions:

> If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea.  If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State.  The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and

defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers.  If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.

Shelton, 621 So.2d at 779 (footnotes omitted).

In this case, the State had no burden to prove more than the existence of the conviction because the validity of the pleas was not challenged by Caliste at the hearing. Caliste did not, and still does not, offer any "affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea[s]" in the predicate offenses. Id. Without such proof, his conclusory assertions did not trigger the need for the state courts to require the State to produce a more perfect record.

The State offered certified copies of the criminal records for Orleans Parish Criminal District Court Case Nos. 364510, 369788 and 367617, and the DOC "pen pack" with information about all of Caliste's prior felonies and a conviction in East Feliciana Parish for bringing contraband into the Louisiana State Penitentiary.[50] Although the state court record does not contain the actual exhibits, the record reflects that certified copies of the predicate case records were admitted at the hearing and reviewed by counsel.  I have located portions of some of the prior records in the state court record provided to

---

[50]St. Rec. Vol. 2 of 4, Multiple Bill Hearing Transcript, pp. 2-7, 1/22/10.

52

me, but they are limited in breadth to the purposes of the pleadings to which they are attached; i.e., the motion to reconsider sentence and the amendment to the multiple bill. Caliste has not offered to this court (or the state courts) any other evidence that the records were inadequate to prove the existence of the convictions as required by Louisiana law.

Caliste's suggestion of the inadequacy of those documents is no more than speculation, perhaps based on the "in globo" admission of the records. Without some evidence supporting this claim, Caliste has failed to demonstrate a basis for his appellate counsel to have challenged the evidence presented at the multiple offender hearing on the basis of invalid prior guilty pleas.

Considered as a whole, Caliste has not demonstrated any deficient performance on the part of his appellate counsel or shown any prejudice caused by counsel's failure to assert these meritless and unsupportable claims in his appeal.  The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court law.  Caliste is not entitled to relief on this issue.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Caliste's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[51]

New Orleans, Louisiana, this _____20th_____ day of May, 2014.



JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[51] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.